**In re Michael J. NISSLY and April L. Nissly, Debtors.**

**No. 00–02896M.**

United States Bankruptcy Court, N.D. Iowa.

Sept. 5, 2001.

**718**

Becket & Lee LLP, Malvern, PA, for creditor.

Larry S. Eide, Mason City, IA, for debtor.

Carol Dunbar, Waterloo, IA, Chapter 13 Trustee.

## DECISION RE: CONFIRMATION OF PROPOSED PLAN

WILLIAM L. EDMONDS, Bankruptcy Judge.

Debtors Michael and April Nissly ask the court to confirm their First Modified Chapter 13 plan filed on June 26, 2001. The standing trustee objects to its confirmation. Hearing was held July 18, 2001 in Mason City. Larry S. Eide appeared as attorney for debtors. Carol F. Dunbar, as standing trustee, appeared on her own behalf. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

Nisslys filed their joint chapter 13 petition on November 6, 2000. They filed an initial plan on November 13, 2000. The trustee objected to confirmation. Debtors thereafter filed their first modified plan (docket no. 30).

Michael Nissly (hereafter "Nissly") is a professional farm manager and licensed insurance agent. He conducts his business in partnership with his brother in Iowa Falls. The partnership is known as Nissly & Nissly. Nissly also operates a marketing business known as Market America. In that business, he employs his wife, April, as his secretary. The couple has two children, Chavis, who is about 13 years old, and Jaden, who is about 10.

In 1996, the couple built a house on an acreage located southwest of Iowa Falls. Although they believed they could afford the house, cost overruns forced them to borrow from parents and use credit cards to finish construction. Nissly values the home and acreage at $225,000.00. The first mortgage against the home is held by F & M Bank. The mortgage debt is approximately $183,000.00. At the time of the confirmation hearing, mortgage payments were in arrears in the amount of $5,529.07. A second mortgage is held by U.S. Bank. The second mortgage debt is approximately $26,122.25. That mortgage is in arrears in the amount of $1,178.52. Annual real estate taxes are about $2,052.00.

In June 2000, Nisslys decided they could not afford the house, so they listed it with a realtor. The listing price was $230,000.00. One person looked at the house, but did not make an offer. At the time of the confirmation hearing, the house was not listed for sale.

At the time of filing, Nisslys scheduled combined monthly income of $8,854.00. This included $5,500.00 in partnership draw by Michael and $2,800.00 in monthly income from Market America. It also included April's $600.00 in wages from Market America.

In an amended Schedule J filed with the modified plan, Nisslys showed the following monthly expenses:

| | |
|---|---:|
| Home mortgage | $1,335.00 |
| Electricity and heating fuel | 150.00 |
| Telephone | 65.00 |
| Cable TV | 25.00 |
| Home maintenance | 130.00 |
| Food | 589.00 |
| Clothing | 150.00 |
| Medical and dental expenses | 250.00 |
| Transportation | 300.00 |
| Recreation, clubs, etc. | 100.00 |
| Charitable contributions | 40.00 |
| Life insurance | 83.00 |
| Disability insurance | 32.00 |
| Homeowner's and automobile insurance | 120.00 |
| Real estate taxes | 171.00 |
| Federal estimated tax payments | 1,070.00 |
| Home second mortgage | 295.00 |
| Iowa estimated tax payments | 184.00 |
| Expenses from operation of business | 2,677.00 |
| Children's activities | 130.00 |
| CNS internet | 25.00 |
| Gifts | 90.00 |
| Hair cuts | 30.00 |
| Household expenses | 313.00 |
| Total | $8,354.00 |

The business expenses of $2,677.00 per month are the expenses of Market America and these expenses include the $600.00 per month which is Mrs. Nissly's wages. Thus, although Nissly shows only $123.00 per month in net income from Market America, Mrs. Nissly's $600.00 monthly income from that business increases its value to the couple.

Nissly & Nissly, the farm management partnership, pays Nissly's annual country club dues of $550.00. Although this is not shown as a personal expense of Michael's, it likely reduces his partnership profit.

Nisslys' children are involved in various activities for which Nisslys pay the cost. These include dance, voice, piano and flute lessons, summer camp, and baseball activities. The family's recreational costs include movies, Nissly's golfing, the family's swimming pool pass, internet access, and cable television fees. They have budgeted $90.00 per month for gifts for the children, parents, brothers and sisters. The couple does not have medical insurance because they say they cannot afford it.

The couple has budgeted $313.00 per month for household expenses as a "catch-all" category. In addition, they have budgeted $130.00 per month for home maintenance. The regular monthly payments for the first and second mortgages total $1,630.00. Real estate taxes on the home average $171.00 per month.

Nisslys propose to pay the trustee $18,678.00 during the 36 month period of the plan. They propose paying $413.00 per month for the six months from December 1, 2000 through and including May 1, 2001. Monthly payments would increase to $500.00 for the 18 month period from June 1, 2001 through and including November 1, 2002. Monthly payments would be $600.00 for the 12 months from December 1, 2002 through and including November 1, 2003.

The trustee's fees for such plan payments would be $1,698.00. The couple's attorney intends to apply for additional legal fees. Projections attached to debtors' plan show that the attorney intends to seek payment of $1,500.00 in fees. Under the plan, the trustee would cure the arrearages on the two mortgages. The cure payments would total $7,559.00 including interest. According to the plan, there would be $7,921.00 available for distribution to creditors holding unsecured claims. Nisslys scheduled unsecured claims in the amount of $135,560.61. A claims report has not yet been filed, although the claims deadline has passed. The dividend to unsecured creditors, if all file the anticipated claims, would be 5.8429 per cent of each claim.

In objecting to the modified plan, the trustee contends that debtors are not making their best effort to pay creditors. Pointing to the Internal Revenue Service's living expense standards for a family of four in Hardin County, Iowa, the trustee argues that the family's expenses are too high. The trustee's objection is, therefore, that debtors are not devoting their disposable income to the plan, because many of their budgeted expenses are not reasonably necessary for the support of the family. See 11 U.S.C. § 1325(b)(1). I agree.

## Decision

### I.

■ Debtors propose a 36–month plan. The first six months of the plan, from December 2000 through May 2001, have already passed. The payments of $413.00 per month for that period appear to be based on the debtors' earlier plan proposal. The trustee objected to that plan contending that it was not the debtors' best effort. Nisslys amended their Schedule J on June 26, 2001 to reduce their expenses. Debtors amended Schedule J, in their own words, to provide expense figures that were "more accurate." After the amendment, Schedules I and J showed $500.00 of disposable income each month. Debtors filed the modified plan on June 26, 2001. For the first six months, the plan payments remained as $413.00 per month.

A chapter 13 plan may not be confirmed over the objection of the trustee unless, as of the effective date of the plan, the debtors pay all unsecured claims in full or the plan provides that "all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B).

The plan was modified to provide $500.00 monthly payments to the trustee beginning in June 2001. If the disposable income figure of $500.00 is more accurate, it was more accurate at the beginning of the 36 month plan period, not merely six months into the plan. The failure to extend the plan period to cure the failure of the plan to provide disposable income during the first six months is fatal to the debtors' obtaining confirmation of this plan. Debtors may not offer less than disposable income, and when an objection is filed, provide the appropriate amount of disposable income only prospectively for any balance of the 36 months. Such a proposal fails to meet the requirement of 11 U.S.C. § 1325(b)(1)(B).

### II.

■ Even the present plan is not the debtors' best effort. Several expense categories remain unacceptably high. Most obvious is the cost of remaining in the home. Nisslys' homestead occupancy is not of long duration. They built the home in 1996. It cost them more than they could afford. There is little if any equity in the home. They value the home at $225,000.00. However, they were unable to sell it when it was listed at $230,000.00. Only one person looked at it, and there were no offers.

To remain in the homestead and preserve what little equity may exist, the debtors propose to make regular mortgage payments to the mortgagees and to cure arrearages owed to each. The monthly payments to keep mortgage payments current and to cure arrearages would be $1,790.00. Real estate taxes are estimated to be $171.00 per month. For much of the plan period, total payments each month on the mortgage and for taxes would be $1,960.00. In the court's opinion, this amount is excessive in light of the small

amount of equity in the home. It prevents Nisslys from making their best effort to pay creditors.

 Recreation expenses are also too high. Recreation, children's activities, internet costs, cable TV costs and gifts to family members total $370.00 per month. Some amount for these expenses is reasonable. But debtors would spend a total of $13,320.00 in these areas over the three-year life of the plan while at the same time, they would provide only $7,920.71 for division among their unsecured creditors.

Debtors estimate their total household expenses at $313.00 per month. This is a catchall category which includes cleaning and personal supplies. Debtors arrived at the estimate by using figures from their Quicken accounting computer program. At trial, they failed to substantiate these costs.

In summary, this seems to be a case where debtors are making an insufficient effort to change their lifestyle. They seek to preserve a homestead which they admit cost more than they could afford. After deducting payments to the trustee, debtors' attorney, and mortgage payments, this plan would provide only $220.00 per month to the unsecured creditors which are owed more than $135,000.00. Based on the evidence and an examination of the plan, I find that debtors are not making their best effort to pay creditors. The plan fails to meet the requirements of 11 U.S.C. § 1325(b)(1)(B). Confirmation will be denied.

### Dismissal

 Debtors filed this case on November 6, 2000. It has been pending nearly 10 months. On January 25, 2001, debtors were given 20 days to modify their initial plan. They did not file their modified plan for five months. It was not filed until June 26, 2001, after the court issued an order requiring debtors to show cause why the case should not be dismissed. Debtors have had sufficient time to propose a plan and to obtain confirmation. Further delay is not warranted in this case.

### ORDER

IT IS ORDERED that confirmation of debtors' modified plan filed June 26, 2001 is denied.

IT IS ORDERED that debtors' chapter 13 case is dismissed.