**Garry James GLEASON, Cynthia Jo Gleason, Debtors.**

**No. 01–01029–C.**

United States Bankruptcy Court, N.D. Iowa.

Sept. 14, 2001.

Cathy L. Fitzmaurice–Hill, Hills, IA, for Debtors.

Carol F. Dunbar, Waterloo, IA, Chapter 13 Trustee.

### ORDER RE CONFIRMATION OF DEBTORS' PLAN

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on August 22, 2001 for final hearing on confirmation of Debtors' Chapter 13 plan. Debtors Garry and Cynthia Gleason appeared with their attorney Cathy Fitzmaurice Hill. Carol Dunbar appeared as

Chapter 13 Trustee. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## STATEMENT OF THE CASE

Trustee objects to confirmation of Debtors' Plan. She asserts Debtors' expenses are excessive. Trustee argues Debtors could dedicate more disposable income to plan payments. Debtors assert they have reduced their expenses to the fullest extent possible. They urge the Court to confirm the plan.

## FINDINGS OF FACT

Debtors' Chapter 13 plan proposes monthly payments of $343.57. Trustee reports this will allow unsecured creditors to receive approximately 29% of their claims over the three-year term of the plan. She objects that certain categories of expenses are excessive, including $150 for school activities, $150 for recreation, $100 for gifts, and $65 for storage expense.

Debtors have two adopted children: a daughter, Sephera, 13 years old, and a son, Race, 9 years old. Debtors receive monthly payments from the Iowa Department of Human Services for both children based on the childrens' special needs. Both children have ADHD. Sephera also has ODD and Race is learning disabled. The total monthly assistance payment Debtors receive is $1,383.30. Including this payment, Debtors' total monthly income is $3,729.52. Schedule I lists total monthly expenses of $3,385.95.

Debtor Cynthia Gleason testified regarding the specific amounts included in the expense categories which are objectionable to Trustee. School activities for Sephera include $20 per week for a rec center membership, $15 bimonthly for dances, and $10 biweekly for cheerleaders'

pizza parties. Race's expenses include $15 per month for books and $10 per month for activities. School lunches cost $30 per month for each child. Sephera's school expenses occur over the 9–month school year. Race's expenses are incurred over the entire year as he attends the PALS program which is a structured summer program for children with behavior problems. Annual school registration for each child is $45.

Recreation expenses include $45 monthly for movies and $20 monthly for bowling. Weekly, Debtors' family goes out to eat and rents videos, incurring expenses of $20 and $12 per week respectively. Annual gifts include $800 for Christmas presents, $300 for birthday presents and $100 for gifts recognizing the children's adoption anniversaries.

Mrs. Gleason testified that Debtors are unable to reduce expenses any more than they already have. She states that both children have special needs. She attributes much of the school and recreation expense to providing the two children opportunities for socialization and giving them things they were deprived of while in foster care prior to their adoptions. The large majority of the gifts Debtors buy are for the children, rather than for themselves or other extended family members.

The storage expense of $65 per month pays for a rental unit Debtors use to store seasonal items which the family continues to use, i.e. bikes and Christmas decorations. Mrs. Gleason testified that their mobile home park has strict requirements for constructing a storage shed on their lot. A conforming shed would cost at least $1,000 plus the costs of a foundation and construction. Because of this cost, Debtors opted to pay for the rental unit.

At the hearing, Trustee stated Debtors were delinquent in payments by $161.67.

Debtors indicated this was the result of some confusion regarding when the amended plan went into effect. They intend to catch up on the payments as soon as possible.

## CONCLUSIONS OF LAW

■ Under § 1325(b)(1)(B), if a Chapter 13 debtor proposes to pay less than the full amount of all claims and the trustee objects, the plan must provide that all of the debtor's projected disposable income be dedicated to plan payments. "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A). The party objecting to confirmation has the initial burden to produce satisfactory evidence that the debtor is not applying all disposable income to the plan. *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir.1987). The burden then shifts to the debtor to justify listed expenditures. *In re Sitarz*, 150 B.R. 710, 718 (Bankr.D.Minn.1993). The debtor has the ultimate burden of persuasion when a disposable income objection to confirmation is asserted. *In re Webb*, 262 B.R. 685, 688 (Bankr.E.D.Tex. 2001).

■ Whether income is "reasonably necessary" for the debtors' maintenance and support is open to interpretation. The Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors. *In re Bottelberghe*, 253 B.R. 256, 263 (Bankr.D.Minn.2000). Chapter 13 debtors are not required to adopt a totally spartan existence; neither are they permitted to continue an extravagant lifestyle at the expense of creditors. *In re Webb*, 262 B.R. 685, 692 (Bankr.E.D.Tex. 2001); *Bottelberghe*, 253 B.R. at 263. Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses. *In re Zaleski*, 216 B.R. 425, 431 (Bankr. D.N.D.1997). This section contemplates some sacrifices or alteration in prepetition consumption levels by Chapter 13 debtors, while allowing them to sustain basic needs not related to their former lifestyles. *Webb*, 262 B.R. at 692; *In re Jones*, 55 B.R. 462, 467 (Bankr.D.Minn.1985).

■ Some expenditures are clearly essential, or nondiscretionary, such as reasonable amounts budgeted for food, clothing and shelter. *In re Gonzales*, 157 B.R. 604, 608 (Bankr.E.D.Mich.1993). The Code, however, recognizes that debtors "cannot live by bread alone." *Id.* Chapter 13 debtors are allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses in their budget, as evidenced in the form used for Schedule J— Current Expenditures. *Id.* Excessive amounts allocated to nondiscretionary expenses also constitute discretionary spending. *Webb*, 262 B.R. at 692; *Gonzales*, 157 B.R. at 608. The Court has the duty to examine the entire budget in Chapter 13 cases to determine whether all listed expenses are reasonable and necessary under § 1325(b). *Jones*, 55 B.R. at 467.

No matter where the "fat" is hidden, such discretionary expenditures typically have more to do with enhancing one's quality of life, acquiring spiritual fulfillment, or just simply relaxing and enjoying oneself, than with subsistence. Since no two people have the same tastes, interests or philosophical dispositions, these discretionary costs can run the gamut from making charitable donations to buying a ticket for a tractor-pull event.[ ] By lumping all discretionary

expenses together, whether they derive from categories more commonly thought of in subsistence terms or from categories commonly thought of as clearly discretionary in nature, the bankruptcy specific expenditures, that is to say, micromanage the details of a debtor's life.

*Gonzales,* 157 B.R. at 608.

■ The court in *Gonzales* devised a method to determine whether discretionary expenses budgeted by Chapter 13 are reasonable and necessary under § 1325(b), and several other courts have utilized this method. *Gonzales,* 157 B.R. at 609; *Webb,* 262 B.R. at 689; *In re Andrade,* 213 B.R. 765, 771 (Bankr.E.D.Cal.1997); *In re Devine,* 1998 WL 386380, at *6 (Bankr. E.D.Pa. July 7, 1998).

> The proper methodology is to aggregate all expenses projected by the debtor which are somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."

*Gonzales,* 157 B.R. at 609. This court examined expenses in *In re Nissly,* 266 B.R. 717, 721 (Bankr.N.D.Iowa 2001), in a similar manner. It determined a total of $370 per month for recreation, children's activities, internet costs, cable TV costs and gifts to family members was too high. Also, $1,960 for the debtors' mortgage and real estate taxes was excessive in light of the small amount of equity in the home. *Id.*

> Discretionary expenses identified by courts include charitable contributions, gifts, recreation, private school tuition, payments for boats, campers and other luxuries, health club and country club dues, and newspapers and magazines. Courts also scrutinize cable TV services, veterinary expenses, cell phones, unspeci-

fied home repairs, and deductions for voluntary retirement funds. *See* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 165.1 (3d ed.2000); *In re Attanasio,* 218 B.R. 180, 201–10 (Bankr.N.D.Ala. 1998) (extensively collecting cases considering excessive or unreasonable expenses in the context of § 707(b) substantial abuse determination).

## ANALYSIS

■ Trustee's objection to confirmation focuses on budgeted amounts of $150 for school activities, $150 for recreation, $100 for gifts, and $65 for storage expense. The Court considers the storage expense in Debtors' circumstances to be reasonable and necessary. School activities, recreation and gifts, however, are discretionary expenses.

Comparing other expenses on Debtors' Schedule J with the IRS standards used by Trustee, the Court notes that some of Debtors' nondiscretionary expenses are higher than the standards and some are lower. Home maintenance of $100 appears high considering Debtors live in a 2000 mobile home. Food expense of $650 is higher than the IRS standards. This amount for a family of four, which does not include amounts for school lunches and pizza parties, is somewhat excessive. The record does not indicate how Debtors calculated medical and dental expenses of $250 per month, or $3,000 per year. None of Debtors' unsecured claims are described as medical or dental claims on Schedule F. Schedule I shows monthly deductions from Mr. Gleason's income of $66.08 for insurance and $10.85 for "med. savings."

In all, the Court calculates Debtors have discretionary income in the aggregate of approximately $550 to $650 per month, including gifts, school activities, recreation, and excessive amounts attributed to non-

discretionary expenses such as food, medical and dental expenses and home maintenance. Debtors' plan proposes monthly payments to the Trustee of $343.57 for three years, all of which is dedicated to Trustee fees, attorney fees and unsecured claims. Scheduled unsecured claims totaling $37,514.46 will receive approximately 29% of their claims over the three-year plan, or $10,859.11. During the same period of time, Debtors will enjoy discretionary spending income of approximately $19,800 to $23,400.

The Court is mindful of Debtors' children's circumstances and special needs, as well as Debtors' desire to devote the income from government assistance payments they receive to the children's needs. However, when parents seek bankruptcy relief, the entire family is affected by the sacrifices and special efforts required by the Code. This family may not continue its prepetition lifestyle to the detriment of creditors. Likewise, Debtors must make a reasonable allocation of the special need funds toward nondiscretionary expenses such as food and housing. Creditors are entitled to expect Debtors to put forth their best efforts toward paying their debts through Chapter 13 plan payments.

### CONCLUSION

Debtors' First Modified Chapter 13 Plan is not confirmable under § 1325(b)(1)(B). The Plan fails to dedicate all Debtors' disposable income to plan payments. Based on the circumstances and the record presented, the Court concludes that Debtors' disposable income allows monthly plan payments substantially larger than proposed. The Court declines to set a specific amount but concludes that a larger payment is warranted. The Court will allow Debtors an opportunity to evaluate their circumstances and propose a figure more consistent with this opinion.

**WHEREFORE,** Trustee's Objection to Modified Plan is SUSTAINED.

**FURTHER,** confirmation of Debtors' First Modified Chapter 13 Plan filed June 8, 2001 is DENIED.

**FURTHER,** Debtors are allowed 14 days from the date of this order within which to file an amended Chapter 13 plan.

**FURTHER,** if Debtors fail to timely file an amended plan, this case shall be dismissed without further notice or hearing.