**In re Keith BECKEL Jr., Sally J. Beckel, Debtors.**

**No. 01–02076–D.**

United States Bankruptcy Court, N.D. Iowa.

Oct. 16, 2001.

Robert J. Murphy, Dubuque, IA, for debtor.

## ORDER RE U.S. TRUSTEE'S MOTION TO DISMISS

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on September 20, 2001 on the U.S. Trustee's Motion to Dismiss. Debtors Keith and Sally Beckel appeared, represented by Attorney Robert Murphy. Assistant U.S. Trustee John Schmillen represented the U.S. Trustee. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## FINDINGS OF FACT

The U.S. Trustee requests dismissal of this case for substantial abuse under § 707(b). After the motion was filed, Debtors amended Schedules I and J. Schedule I shows Debtors' combined monthly net income is $4,693.87. Debtors list total monthly expenses of $5,084 on Schedule J. The U.S. Trustee asserts Debtors have potential disposable income with which they could fund a Chapter 13 plan. Mr. Schmillen argues Debtors have a good income, stable jobs, dependable cars and a sizable house. He asserts Debtors could make a meaningful payment to creditors without having to drastically modify their lifestyle.

Mrs. Beckel testified about Debtors' household income and expenses. Debtors received approximately $2600 in federal and state tax refunds for the 2000 tax year. They hope to receive a similar amount for 2001. Debtors' 20–year old daughter, Michelle, has recently moved out to attend college. She is not employed and is a full-time student. Debtors continue to provide for some of her personal expenses. Schedule J reflects expenses for a family of three.

Mrs. Beckel testified that Debtors' original Schedule J was less accurate than the amended schedule. The original figures came from "top of the head" estimates Mrs. Beckel made when Debtors went to a credit counseling service a year before filing their Chapter 7 petition. Debtors paid $1200 per month for five months through the credit counseling service but were unable to maintain the payments. Mrs. Beckel admitted that Debtors could possibly pay $400 or $500 a month now by cutting back on their expenses.

Debtors list 14 credit cards with aggregate unsecured debt of $74,251. Mrs. Beckel testified that this debt arose over a long period of time and was incurred for personal, not business, reasons. She received new credit card accounts which she used to pay older credit card payments. Mrs. Beckel testified it was like being trapped in a whirlpool.

Debtors have two mortgages with monthly payments totaling $1207. They plan to reaffirm these debts and have no equity in their home. Heating costs have risen recently. Debtors pay for a lawn service. They recently replaced a toilet and need to replace their 20–year old refrigerator and a furnace pump. Their house needs to be painted and Debtors have received an estimate of $1700 for the job. Prices for food have risen although Debtors may see a decrease in food ex-

pense with their daughter leaving home. Mr. Beckel is diabetic. Sugar-free food and medical needs are expensive. Mr. Beckel also has problems with his teeth, requiring dentures. He got uppers last year and now needs lower dentures.

Debtors intend to reaffirm secured debt on their two cars, a 1998 Ford Contour and 1999 Buick Regal. Transportation expense on Schedule J reflects average monthly mileage on the cars, estimating 20 miles per gallon and a gasoline cost of $1.50 per gallon. Recreation expense of $200 includes going out to dinner once a week and Michelle's movies. Debtors estimate $135 to $150 per month for gifts as they give $100 each on the birthdays of their son, his wife and their daughter, as well as gifts for three granddaughters, parents, nieces and nephews, and for weddings and funerals.

Mrs. Beckel testified they have only $85 in savings and do not carry a balance in their checking account from month to month. Debtors assert their expenses are reasonable. They argue they do not have a lot of luxuries and there is no money available to pay creditors.

The Court has compared Debtors' expenses with IRS Collection Financial Standards which have been used to evaluate disposable income in bankruptcy cases. According to the standards, a family of three with Debtors' gross income can be expected to have monthly expenses totaling approximately $3200. Debtors' total expenses of $5084 equal approximately 150% of the IRS standard expenses. Debtors' housing and utilities expenses equal $1717 compared to the standard for Dubuque County of $834. Debtors' transportation expenses total $1243 compared to the standard for the U.S. Midwest Region of $1006. The remainder of Debtors' expenses total $2124 compared to the IRS standards of $1399 for food, housekeeping

supplies, apparel, personal care products, services and miscellaneous for a family of three with a gross monthly income of $5830 and over. Debtors' gross monthly income is in excess of $7000.

## CONCLUSIONS OF LAW

■ Section 707(b) of the Bankruptcy Code provides the court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b). "Substantial abuse" is not a defined term. In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'" *In re Koch*, 109 F.3d 1285, 1288 (8th Cir.1997); *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989).

■ For § 707(b) purposes, ability to pay creditors is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding. *Koch*, 109 F.3d at 1288. Confirmation of a Chapter 13 plan requires, if an objection to confirmation is advanced, that the plan provide that all of the debtors' projected disposable income to be received during a three-year plan will be applied to plan payments. 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A). Evaluating Debtors' ability to fund a Chapter 13 plan necessitates a review of Debtor's disposable income.

■ This court has held that regular tax refunds should be taken into account in this analysis. *In re Nelson*, No. 97-03710S, slip op. at 5–6 (Bankr.N.D.Iowa March 16, 1998), *aff'd*, 223 B.R. 349 (8th

Cir. BAP 1998). An analysis of projected disposable income necessarily considers the amount of the debtor's current income tax withholdings and whether any tax refund will be generated. *In re O'Brien*, 181 B.R. 71, 76 (Bankr.D.Ariz.1995).

█ Whether income is "reasonably necessary" for the debtors' maintenance and support is open to interpretation. *See In re Gleason*, 267 B.R. 630 (Bankr. N.D.Iowa 2001) (considering requirements for Chapter 13 plan confirmation). In Chapter 13, the Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors. *In re Bottelberghe*, 253 B.R. 256, 263 (Bankr. D.Minn.2000). Chapter 13 debtors are not required to adopt a totally spartan existence; neither are they permitted to continue an extravagant lifestyle at the expense of creditors. *In re Webb*, 262 B.R. 685, 692 (Bankr.E.D.Tex.2001); *Bottelberghe*, 253 B.R. at 263. Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses. *In re Zaleski*, 216 B.R. 425, 431 (Bankr.D.N.D.1997). This section contemplates some sacrifices or alteration in prepetition consumption levels by debtors, while allowing them to sustain basic needs not related to their former lifestyles. *Webb*, 262 B.R. at 692; *In re Jones*, 55 B.R. 462, 467 (Bankr.D.Minn. 1985).

█ Some expenditures are clearly essential, or nondiscretionary, such as reasonable amounts budgeted for food, clothing and shelter. *In re Gonzales*, 157 B.R. 604, 608 (Bankr.E.D.Mich.1993). The Code, however, recognizes that debtors "cannot live by bread alone." *Id.* Chapter 13 debtors are allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses, as evidenced in the form used for Schedule J—Current Expenditures. *Id.* Excessive amounts allocated to nondiscretionary expenses also constitute discretionary spending. *Webb*, 262 B.R. at 692; *Gonzales*, 157 B.R. at 608. The Court has the duty to examine the entire budget to determine whether all listed expenses are reasonable and necessary under § 1325(b). *Jones*, 55 B.R. at 467.

> No matter where the "fat" is hidden, such discretionary expenditures typically have more to do with enhancing one's quality of life, acquiring spiritual fulfillment, or just simply relaxing and enjoying oneself, than with subsistence. Since no two people have the same tastes, interests or philosophical dispositions, these discretionary costs can run the gamut from making charitable donations to buying a ticket for a tractor-pull event.[ ] By lumping all discretionary expenses together, whether they derive from categories more commonly thought of in subsistence terms or from categories commonly thought of as clearly discretionary in nature, the bankruptcy judge will often obviate the need to pass judgment on specific expenditures, that is to say, micromanage the details of a debtor's life.

*Gonzales*, 157 B.R. at 608.

█ The court in *Gonzales* devised a method to determine whether discretionary expenses budgeted by debtors are reasonable and necessary under § 1325(b), and several other courts have utilized this method. *Gonzales*, 157 B.R. at 609; *Webb*, 262 B.R. at 689; *In re Andrade*, 213 B.R. 765, 771 (Bankr.E.D.Cal.1997); *In re Devine*, 1998 WL 386380, at *6 (Bankr. E.D.Pa. July 7, 1998).

> The proper methodology is to aggregate all expenses projected by the debtor

which are somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."

*Gonzales*, 157 B.R. at 609.

This court examined expenses in *In re Nissly*, 266 B.R. 717 (Bankr.N.D.Iowa 2001), in a similar manner. It determined a total of $370 per month for recreation, children's activities, internet costs, cable TV costs and gifts to family members was too high. Also, $1,960 for the debtors' mortgage and real estate taxes was excessive in light of the small amount of equity in the home. *Id.* Further, this court in *Gleason*, 267 B.R. 630, 2001 WL 1149069, adopted the *Gonzales* approach as it applies to confirmation of a Chapter 13 plan.

Discretionary expenses identified by courts include charitable contributions, gifts, recreation, private school tuition, payments for boats, campers and other luxuries, health club and country club dues, and newspapers and magazines. Courts also scrutinize cable TV services, veterinary expenses, cell phones, unspecified home repairs, and deductions for voluntary retirement funds. *See* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 165.1 (3d ed.2000); *In re Attanasio*, 218 B.R. 180, 201–10 (Bankr.N.D.Ala. 1998) (extensively collecting cases considering excessive or unreasonable expenses in the context of § 707(b) substantial abuse determination).

## ANALYSIS

■ In light of the foregoing, the Court concludes that granting Debtors relief would be a substantial abuse of the provisions of Chapter 7 pursuant to § 707(b). Debtors have the ability to pay creditors by funding a Chapter 13 plan.

They admit it is possible for them to pay $400–500 per month toward debts. In three years of such payments, Debtors could pay $18,000, less administrative costs, or approximately 20% of total unsecured debt. Including annual anticipated tax refunds of $2600, or $7800 over three years in a three-year plan would provide another 10% return to unsecured creditors.

Debtors' schedules show expenses exceeding the IRS Collection Financial Standards, sometimes used as a guide for determining § 1325(b)(2) disposable income, by approximately $1750. The Court calculates that a three-year plan with $1750 monthly payments would provide unsecured creditors with a substantial return of almost 80% of total claims.

The Court has calculated Debtors' discretionary spending by lumping together all arguably discretionary expenses and excessive amounts of nondiscretionary line items. Discretionary expenses include the amounts Debtors list on Schedule J as amended for cable TV, recreation, charitable contributions, "Other: 401K", and "Other: Haircut, pet care, gifts". The total for these line items is $643. Nondiscretionary expenses which include excessive amounts include amounts listed for telephone, home maintenance, and laundry and dry cleaning. Furthermore, Debtors' housing and transportation expenses are higher than average. From these arguably nondiscretionary expenses, the Court calculates discretionary spending of at least $400. Under this discretionary spending estimation, monthly payments of $1000 could provide unsecured creditors approximately 48% of their claims over three years.

The Court finds granting Debtors a Chapter 7 discharge in this case would be a substantial abuse of the Bankruptcy Code. Debtors' income and expenses are both high. They appear to take for grant-

ed a sizeable home which they are able to maintain, reliable transportation, the ability to give substantial gifts and help their daughter through school, and health and dental care. Many Chapter 13 debtors are not so fortunate but still manage to pay disposable income to their creditors. Under the foregoing calculations, Debtors could pay between 30% and 80% of unsecured claims over three years in a hypothetical Chapter 13 case. Because Debtors have this substantial ability to pay creditors, granting them Chapter 7 relief would constitute substantial abuse of the Bankruptcy Code.

**WHEREFORE,** the U.S. Trustee's Motion to Dismiss is SUSTAINED.

**FURTHER,** Debtors shall be given 14 days from the date of this order to file a Motion to Convert to a Chapter 13 if they wish to do so.

**FURTHER,** if Debtors do not convert to a Chapter 13 within this time period, this case will be dismissed without further notice or hearing.