**In re Mark J. KREIN, Esther K. Krein, Debtors.**

**Mark J. Krein, Plaintiff,**

v.

**Mary K. Krein Hanagan, Defendant.**

**Bankruptcy No. 97–01060–D.
Adversary No. 98–9084–D.**

United States Bankruptcy Court, N.D. Iowa.

Feb. 23, 1999.

steps into the creditor's shoes."

Brian W. Peters, Dubuque, IA, for Debtor/Plaintiff.

Michael M. Lindeman, Cedar Rapids, IA, for Defendant.

### RULING

PAUL J. KILBURG, Bankruptcy Judge.

Trial of this matter was held on January 26, 1999. Attorney Brian Peters represented Debtor/Plaintiff Mark J. Krein. Attorney Michael Lindeman represented Defendant Mary K. Krein Hanagan. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor filed this action to determine dischargeability of debt arising from the parties' divorce proceedings. He asserts the debts are in the nature of a property settlement, and not support. He states the deadline for Ms. Hanagan to object to dischargeability for property settlement debts pursuant to § 523(a)(15) has passed. Ms. Hanagan asserts the debts are in the nature of support and are excepted from discharge.

## FINDINGS OF FACT

Debtor filed his Chapter 7 petition on April 11, 1997. The deadline for filing a complaint objecting to discharge of a non-support, dissolution debt under § 523(a)(15) was July 28, 1997. Ms. Hanagan did not file a dischargeability complaint either before or after the deadline.

The parties divorced on May 22, 1995 after 20 years of marriage. Paragraph 4 of the parties' Settlement Agreement (Ex. 1 at 4), dated and filed May 22, 1995 in an Illinois State Court, distributes marital debt. The parties had significant debts to creditor card companies and others. Paragraph 4 made Ms. Hanagan solely responsible for $4,169 of the marital debts. Debtor became solely responsible for approximately $55,332.70. The Settlement Agreement further states:

> The Husband agrees to take on these debts in lieu of maintenance to his Wife, such that he acknowledges that he will not be able to discharge these debts in bankruptcy. Husband assumes this debt also with the understanding between the parties that each will pay their own attorney's fees, and acknowledging that the Husband earns almost four times what the Wife does through employment.

(Ex. 1 ¶ 4, at 4).

The Settlement Agreement contains a paragraph titled "MAINTENANCE". (Ex. 1 ¶ 15, at 7). This paragraph states: "Each of the parties hereto does forever relinquish, release and waive all rights of maintenance, except as otherwise delineated in this settlement agreement regarding the marital debts." *Id.* Ms. Hanagan testified that, as the Settlement Agreement indicates, Debtor assumed the bulk of the marital debt in lieu of paying Ms. Hanagan alimony or spousal support payments. She testified that Debtor earned at least three times what she earned during their marriage. At the end of their marriage, Debtor was earning more than $40,000 compared to Ms. Hanagan's earnings of approximately $13,000.

In addition to the foregoing, also at issue are handwritten agreements between the parties, signed and dated on March 18, 1995. (Exhibits A and B). In these side agreements, Debtor agreed to completely assume a debt to MBNA MasterCard. Ms. Hanagan agreed to completely assume a debt to Chevy Chase Visa. These debts "will not be viewed as joint marital debt", according to the agreements. Debtor would advance $2000 cash from the MBNA account and Ms. Hanagan would advance $4000 cash from the Chevy Chase account with both advances "to go towards attorney fees and housing." Ms. Hanagan testified their dissolution attorneys were aware of these agreements. She stated these debts were not included in the dissolution settlement documents.

After the side agreements were made, Ms. Hanagan destroyed the MBNA account card issued in her name and Debtor destroyed the Chevy Chase account card issued in his name. Ms. Hanagan removed Debtor's name from the account with Chevy Chase for which she assumed sole responsibility. However, Debtor failed to remove Ms. Hanagan's name from the MBNA account for which he assumed sole responsibility.

At trial, Ms. Hanagan conceded that she is not asserting a claim under § 523(a)(15) for which the deadline has passed. The issue for the Court to decide is whether the debts in the parties' Settlement Agreement and the debt to MBNA MasterCard which Debtor assumed in the parties' side agreement are nondischargeable as support under § 523(a)(5).

## CONCLUSIONS OF LAW

A debt to a former spouse for alimony, maintenance or support of the spouse pursuant to a divorce decree or separation agreement is not dischargeable. 11 U.S.C. § 523(a)(5). The party asserting the nondis-

chargeability of a marital debt has the burden of proof. The court must apply the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Holdenried*, 178 B.R. 782, 787 (Bankr. E.D.Mo.1995); *contra In re Daulton*, 139 B.R. 708, 710 (Bankr.C.D.Ill.1992) (stating debtor has burden of proving debts are dischargeable under § 523(a)(5)).

> Section 523(a)(5) establishes three requirements that must be met before a marital obligation becomes nondischargeable in bankruptcy: (1) the debt must be in the nature of alimony, maintenance or support; (2) it must be owed to a former spouse or child; and (3) it must be in connection with a separation agreement, divorce, or property settlement agreement.

*In re Reines*, 142 F.3d 970, 972 (7th Cir. 1998), *cert. denied* —— U.S. ——, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999); *see also In re Ianke*, 185 B.R. 297, 300 (Bankr.E.D.Mo. 1995). Debtor asserts his assumption of the marital debt was in the nature of a property settlement, not support. The relevant debts are owed to credit card companies, not directly to Ms. Hanagan. The MBNA Master-Card debt which Debtor assumed in the parties' side agreement was not included in the dissolution proceedings. Based on these operative facts, Debtor claims these debts are dischargeable.

## "OWED TO A FORMER SPOUSE"

■ The case law in this Circuit provides that an award in a divorce decree, if in the nature of support, is nondischargeable even if payable to a third party. *In re Kline*, 65 F.3d 749, 751 (8th Cir.1995) (considering award of attorney fees). Under § 523(a)(5), "[d]ebts payable to third persons can be viewed as maintenance or support obligations; the crucial issue is the function the award was intended to serve." *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983). Undertakings by one spouse to pay the other's debts can be "support" for bankruptcy purposes. *Id.* The identity of the payee is less important than the nature of the debt. *In re Chang*, 163 F.3d 1138, 1141 (9th Cir. 1998).

■ A joint obligation not paid directly to the spouse is not automatically dischargeable. *In re Burns*, 186 B.R. 637, 642 (Bankr. D.S.C.1992). A commitment to pay joint debt to a third party after the divorce is an obligation which one former spouse may enforce against another under state law. *In re Holt*, 40 B.R. 1009, 1011–12 (S.D.Ga.1984). "The 'debt' which is created by the separation agreement or decree and therefore is nondischargeable, is the undertaking of a former spouse to pay a past or future obligation of the other spouse, or the couple." *Id.* at 1012.

In *Ianke*, the court was presented with facts similar to those presented here. The debtor agreed to pay outstanding balances on credit card accounts in his dissolution proceeding. *Ianke*, 185 B.R. at 298. The Agreement included a provision that the debtor held his former spouse harmless for the credit card debts and was prohibited from discharging his obligation to his former spouse through bankruptcy. *Id.* at 299. The debtor's former spouse testified that she accepted a smaller award of maintenance because the debtor had agreed to pay the credit card debt. *Id.*

The court held that the Separation Agreement created an obligation between the debtor and his former spouse from the "hold harmless" provision, separate from the obligation to the credit card issuers. *Id.* at 300. The court concluded the Settlement Agreement created an obligation between the debtor and his former spouse which, if the other elements of § 523(a)(5) are met, may be nondischargeable. *Id.* at 301; *see also In re Reiff*, 166 B.R. 694, 696 (Bankr.W.D.Mo. 1994).

■ This Court concludes Debtor owes an obligation to Ms. Hanagan based on the language in paragraph 4 of the Settlement Agreement (Exhibit 1): "[Debtor] shall be solely responsible for the payment of the following debts and liabilities, and shall hold [Ms. Hanagan] harmless thereon." An identical obligation is created by the parties' side agreement involving the MBNA MasterCard through the language: "This debt will be completely assumed" by Debtor. The debts

at issue are Debtor's obligations to pay joint creditors and to hold Ms. Hanagan harmless from the listed liabilities. Debtor's obligation to Ms. Hanagan to assume sole responsibility for the listed credit card debts and to hold her harmless for those debts satisfies the "owed to a former spouse" element of § 523(a)(5).

## "IN CONNECTION WITH" A SEPARATION AGREEMENT OR DIVORCE DECREE

■ Debtor's obligation under paragraph 4 of the parties' Settlement Agreement unquestionably arose "in connection with" their separation agreement or divorce decree under § 523(a)(5). The parties' side agreements must be considered separately. These agreements were signed on March 18, 1995, two months before the parties' divorce was final on May 22, 1995. (Exhibits A and B). The documents state that the debt each was to assume "will not be viewed as joint marital debt". The amounts each party advanced on their credit card accounts were "to go towards attorney fees and housing." The agreements are handwritten and were not made part of the court record in the parties' divorce proceedings. Ms. Hanagan testified the debts listed in the side agreements were not included in the debts listed in paragraph 4 of the parties' Settlement Agreement. She further testified, however, that the side agreements were to become part of the overall divorce settlement.

Section 523(a)(5) excepts from discharge certain marital debts arising "in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement." The First Circuit considered whether court-ordered support was dischargeable where the support order was not explicitly embodied in "a separation agreement, divorce decree, or property settlement agreement" in *Shine v. Shine*, 802 F.2d 583, 584 (1st Cir.1986). The debtor's former spouse filed an action for separate maintenance and received a support order in the District of Columbia. Three years later she received a decree of

divorce in Virginia with no provision for alimony or support. *Id.* The former spouse later sued to collect support arrearages based on a consent decree. *Id.* After considering legislative history and established principles of law, the court found that the support obligations were nondischargeable even though they were not embodied in "a separation agreement, divorce decree, or property settlement agreement." *Id.* at 588. The court focused on "Congressional policy" to ensure that genuine support obligations would not be discharged. *Id.; see also In re Kline*, 65 F.3d 749, 751 (8th Cir. 1995) (stating exceptions from discharge for spousal and child support deserve more liberal construction than other exceptions from discharge which are narrowly construed).

A claim under an antenuptial agreement has been held to constitute a debt "in connection with" a divorce decree, separation agreement or property settlement agreement within § 523(a)(5). *In re Sparks*, 206 B.R. 481, 485 (Bankr.N.D.Ill.1997). The court stated "[i]t is unlikely that Congress would have intended to exclude a whole class of agreements governing marital rights from such an otherwise all-inclusive provision." *Id.* It is the debtor's obligation to pay support to the spouse or child *as agreed or ordered* by the court that is nondischargeable debt. *In re Fonnemann*, 128 B.R. 214, 217 (Bankr. N.D.Ill.1991) (finding support arising from a judge's letter opinion in divorce proceeding subsequently dismissed not within § 523(a)(5) exception to discharge; the support obligation was not embodied in an agreement or order) (emphasis added).

■ This Circuit gives § 523(a)(5) a more liberal construction than other exceptions from discharge and the language of this section is recognized as expansive and all-inclusive. This Court is aware that all matters involving the marital estate should be documented and disclosed to the dissolution judge. Informal, off-the-record agreements should be discouraged because of their ambiguity. Nevertheless, when Debtor and Ms. Hanagan executed their side agreements two months before their dissolution was final, they were already deeply involved in dissolution proceedings. The agreements covered

financial matters integrally involved in the dissolution. It is the conclusion of this Court that the side agreements are separation agreements or property settlement agreements within the meaning of § 523(a)(5). They are "in connection with" the parties' dissolution proceedings even though they are not approved by a court order or formally filed with the divorce court. The Court concludes that, though viewed with disfavor, side agreements can give rise to nondischargeable debts under § 523(a)(5) if the other requirements of that section are satisfied.

## "IN THE NATURE OF ALIMONY, MAINTENANCE OR SUPPORT"

 Having concluded that Debtor's agreements to pay and hold Ms. Hanagan harmless on debts listed in paragraph 4 of the parties' Separation Agreement and in the side agreement are "owed to a former spouse" "in connection with" divorce proceedings, the Court must determine whether these obligations are actually in the nature of alimony, maintenance or support under § 523(a)(5).

> Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law. Debts payable to third persons can be viewed as maintenance or support obligations; the crucial issue is the function the award was intended to serve . . . [B]ankruptcy courts are not bound . . . to accept a divorce decree's characterization of an award as maintenance or a property settlement. . . . Whether in any given case such obligations are in fact for 'support' and therefore not dischargeable in bankruptcy, is a question of fact to be decided by the Bankruptcy Court as trier of fact in light of all the facts and circumstances relevant to the intention of the parties.

*In re Williams,* 703 F.2d 1055, 1057–58 (8th Cir.1983); *see also In re Tatge,* 212 B.R. 604, 608 (8th Cir. BAP 1997).

 In determining intent, the court must focus on the function that the obligation was intended to serve when the parties entered into the agreement. *Boyle v.*

*Donovan,* 724 F.2d 681, 683 (8th Cir.1984). Numerous factors have been found to be indicative of such intent. *See In re Voss,* 20 B.R. 598, 602 (Bankr.N.D.Iowa 1982). The Third Circuit has concisely set out three primary indicators which subsume the multiple factors relevant to intent used by various courts. *In re Gianakas,* 917 F.2d 759, 762 (3d Cir.1990). These factors are 1) the language of the agreement in the context of surrounding circumstances, 2) the parties' financial circumstances and 3) the function served by the obligation at the time of the divorce or settlement. *Id.* at 762–63.

Applying these factors to assumption of credit card debt, the court in *In re Borzillo,* 130 B.R. 438, 448 (Bankr.E.D.Pa.1991), focused on the financial disparities between the spouses as the main indicator of a support function. "That function can be inferred where either the support granted would be inadequate but for the debt assumption or where the debt itself was initially incurred to provide the necessities of everyday life." *In re Barac,* 62 B.R. 713, 717 (Bankr.E.D.Mo. 1985).

 According to the language of paragraph 4 of the parties' Separation Agreement, Debtor's assumption of the joint debts and hold harmless agreement constitute support. This paragraph states Debtor "agrees to take on these debts in lieu of maintenance." Debtor acknowledges in that paragraph that he will not be able to discharge these debts in bankruptcy. Paragraph 15 titled "Maintenance" states the parties waive all rights of maintenance "except as otherwise delineated . . . regarding the marital debts."

Debtor argues that because Ms. Hanagan waived her right to one-half of Debtor's Pension in consideration of the large marital debt assumed by Debtor, the assumption of debt takes on the character of a property settlement. This Court disagrees. Considering the document as a whole and all provisions therein, the language of the Separation Agreement supports a finding that Debtor's assumption of the joint debts constitutes support.

While the evidentiary record in this case was not developed to the extent which the Court would prefer, the parties' financial circumstances at the time of the dissolution also lend support to a finding that the debt assumption constitutes support. Ms. Hanagan testified Debtor earned more than three times her salary while they were married. This is acknowledged by Debtor in the Separation Agreement at paragraph 4.

The final consideration, and perhaps the most important, is the function the award was meant to serve. Ms. Hanagan testified, as the language of the Separation Agreement indicates, that the parties intended Debtor to assume the greater portion of the marital debt rather than pay alimony. The side agreement obligating Debtor to pay the MBNA MasterCard states that the anticipated $2,000 cash advance on that account would go towards attorney fees and housing. These types of expenses are generally interpreted to serve a support function under § 523(a)(5). *See Kline,* 65 F.3d at 751; *Tatge,* 212 B.R. at 608 (finding debtor's agreement to make mortgage payments was intended to serve the most basic of support functions). Considering Debtor's assumption of the MBNA MasterCard debt with Ms. Hanagan's agreement to assume the Chevy Chase Visa debt, having a similar cash advance also for housing and attorney fees, leads the Court to conclude Debtor's obligation under the side agreement was meant to function as support.

The record does not disclose whether the debts assumed by Debtor in the Separation Agreement were initially incurred to provide basic necessities of life. However, the Court also considers whether support granted is inadequate but for the debt assumption. In this case, no support was awarded other than the debt assumption. Considering the parties' financial disparities, the Court concludes Debtor's assumption of the marital debts functioned to allow Ms. Hanagan to afford basic necessities. Had Ms. Hanagan been required to make monthly payments on the marital debt, her salary may not have covered the necessities of food, clothing and shelter. *See Williams,* 703 F.2d at 1057 (stating court could reasonably find that the

assumption of debt was intended to help debtor's former spouse meet monthly living expenses). Based on the entire record, the Court concludes Debtor's assumption of debt in the Separation Agreement and the side agreement are actually in the nature of alimony, maintenance or support under § 523(a)(5).

## REMEDY

The debt at issue is Debtor's obligation to pay and hold Ms. Hanagan harmless from certain of their joint debts. *See In re Marquis,* 203 B.R. 844, 847 n. 5 (Bankr. D.Me.1997). "Such obligations as [the debtor] himself may have to those creditors (by contract or otherwise in the absence of the divorce decree) are outside the purview of § 523(a)(5)." *Id.* In *Ianke,* the court stated

The determination of nondischargeability extends only to the Debtor's obligation created under the Separation Agreement to indemnify and hold harmless. Any other obligation of the Debtor to pay the credit card ... debts to entities other than his former spouse is not nondischargeable.

185 B.R. at 302.

The court in *In re Reiff,* 166 B.R. 694, 696 (Bankr.W.D.Mo.1994), held under similar facts that a debtor's former spouse will still be liable for debts as a co-debtor after the debtor's discharge, even though the debtor had promised to hold his former spouse harmless on the debts. It noted that the right to indemnity under a hold harmless agreement is the right to be reimbursed to the extent a party is actually required to repay creditors. *Id.* The court held the debtor's former spouse may only enforce the nondischarged indemnification obligation to the extent she, in fact, pays the debts subject to the obligation. *Id.*

There is admittedly authority to the contrary. *In re Burns,* 149 B.R. 578, 582 (Bankr.E.D.Mo.1993). In *Burns,* the Court stated: "there is no point in distinguishing between the Debtor's duty to pay the money owed the creditors ... and his corresponding duty to indemnify his ex-wife". *Burns* at 582. However, this Court feels that such a distinction must be drawn. It is possible that some or none of these creditors will

pursue collection of these accounts. Ms. Hanagan testified that she had been contacted by some of these creditors at an early stage but had not been bothered recently. If the Court were not to make this distinction, it could result in a windfall to Ms. Hanagan.

 The parties were represented in their dissolution proceedings by counsel. The manner in which the parties' liabilities were divided was purely the decision of the parties. Under the agreed language, Ms. Hanagan is entitled to reimbursement if she is required to repay creditors. It is the obligation of this Court to determine issues of dischargeability. It is not, however, the obligation of this Court to rewrite the contractual relationships entered into in the dissolution proceedings. While additional litigation in State court may be required to enforce this right, it is no greater burden than collecting periodic alimony or child support. Giving the parties the benefit of the negotiated contract requires this Court to conclude that Ms. Hanagan may only collect the indemnification obligations from Debtor to the extent that she in fact is required to pay the credit card companies.

## SUMMARY

The Court concludes Debtor's obligation to hold Ms. Hanagan harmless on the debts he assumed in their divorce proceedings is excepted from discharge under § 523(a)(5) as support, alimony or maintenance. Ms. Hanagan's right to pursue Debtor for indemnity to the extent she is actually required to pay the creditors listed in paragraph 4 of the Separation Agreement and MENA MasterCard survives Debtor's discharge.

Debtor complains that Ms. Hanagan has failed to prove the remaining credit card balances were incurred prior to the parties' divorce. The Court need not make a determination of the amount of credit card debt which remains from the parties' divorce proceedings. Suffice it to say, Debtor assumed the joint marital debts listed in paragraph 4 of the Separation Agreement and the MENA MasterCard debt in the parties' side agreement. If Ms. Hanagan is required to pay these debts, Debtor's obligation to hold her harmless from the listed debts is not discharged in this bankruptcy proceeding.

**WHEREFORE,** Debtor Mark J. Krein's Complaint to Determine Dischargeability is DENIED.

**FURTHER,** Debtor's obligations to Defendant Mary K. Krein Hanagan to pay and hold her harmless from the debts listed in paragraph 4 of the Separation Agreement and the MENA MasterCard debt in the parties' side agreement are excepted from discharge as support under 11 U.S.C. § 523(a)(5).