**Beth Anne O'SHAUGHNESSY f/k/a Beth Haring f/k/a Beth Anne Haring Lee, Debtor.**

**Kenneth E. Lee, Plaintiff,**

**v.**

**Beth Anne O'Shaughnessy, Defendant.**

**Bankruptcy No. 02–02624–C.**
**Adversary No. 02–9150–C.**

United States Bankruptcy Court, N.D. Iowa.

Oct. 7, 2003.

Richard L. Boresi, Cedar Rapids, IA, for Debtor.

## ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for hearing on September 18, 2003 on Plaintiff's complaint to determine dischargeability of a debt. Plaintiff Kenneth E. Lee appeared with Attorney John Titler. Defendant Beth Anne O'Shaughnessy appeared with Attorney Richard Boresi. After the presentation of evidence, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Plaintiff Kenneth E. Lee alleges that under 11 U.S.C. § 523(a)(15) certain debt owed by Debtor Beth Anne O'Shaughnessy to Plaintiff's father, Woodrow Lee, is not dischargeable. Debtor pleads that the debt is in fact dischargeable because the evidence satisfies at lease one of the exceptions to the general rule preventing discharge under § 523(a)(15).

### FINDINGS OF FACT

Plaintiff and Debtor were married in 1979. This marriage produced two children, one is now in college and the other resides with Plaintiff. The marriage between Debtor and Plaintiff was dissolved in 1997. Throughout the 17–year marriage, both spouses maintained careers. Debtor, who holds a master's degree in elementary education, was an elementary school teacher in the early years of the marriage. She eventually became an elementary principal, a position she held for ten years. Plaintiff works in the computer software industry.

In addition to the salaries earned by both individuals during the marriage, the couple received numerous cash gifts from Plaintiff's father, Woodrow Lee. Both Plaintiff and Debtor testified that these gifts occurred almost every year in an amount between $10,000 and $20,000. Although neither party presented evidence of the exact total amount of the gifts received during marriage, it appears the cumulative value of the gifts from Woodrow Lee was approximately $200,000.

Notwithstanding the fact that both spouses were employed and receiving substantial cash gifts from Woodrow Lee, the couple borrowed $50,000 from Mr. Lee in August 1995. Both Plaintiff and Debtor signed a promissory note in favor of Mr. Lee at this time. In January 1996, Mr. Lee gifted another $20,000 to Plaintiff and Debtor in the form of loan forgiveness. A new promissory note was then executed by Plaintiff and Debtor to reflect the new loan balance of $30,000.

In May 1997, the marriage between Plaintiff and Debtor was dissolved based on a settlement agreement which divided the couple's assets and liabilities and provided for custody and support of the two children. The relevant portion of the settlement agreement stipulates that Debtor

would assume and pay one half of the joint debt owed to Woodrow Lee and that the total debt at the time of dissolution was approximately $30,000. Paragraph 10.E of the settlement agreement states that "[e]ach party will hold the other harmless from any debt, obligation or liability assumed under any provision of this settlement agreement."

The couple's elder daughter is now in college and Plaintiff is the primary care giver for the couple's younger daughter. Both parents contribute to the education expenses of the elder child and Debtor is obligated to pay Plaintiff $329.65 per month for the support of the younger child. Debtor married Patrick O'Shaugnessy in May 2002. Mr. O'Shaugnessy is a college professor. They live in Iowa City.

After serving as a elementary principal for ten years, Debtor was laid off by the Vinton–Shellsburg Community School District. Debtor's $57,000 per year position was terminated in July 2002. Debtor filed for relief under Chapter 7 of the Bankruptcy Code later that same month. Debtor listed approximately $48,500 in unsecured debts on her bankruptcy petition. Of that amount, $19,500 consists of the debt owed to Mr. Lee.

After receiving unemployment compensation, Debtor obtained employment at The University of Iowa in August 2002 at a salary of $40,000 per year. This position was subsequently terminated. She has since been working in day care and currently makes $500 per week. Debtor will start a new position in October 2003, at an annual salary of $27,000.

Plaintiff initiated this adversary proceeding seeking a determination that the debt owed by Debtor to Woodrow Lee is nondischargeable under 11 U.S.C. § 523(a)(15). Plaintiff asserts that he is jointly liable on the debt, and if Debtor does not pay her half, he will be obligated to do so. Plaintiff states that he paid his portion of the debt in full in February 1998. The cancellation of Plaintiff's debt is noted on the promissory note.

Debtor claims that Woodrow Lee will not enforce the obligation against his son, and thus, Plaintiff will not be injured by the discharge of the debt. Debtor testified that when she asked Plaintiff if Woodrow Lee would enforce the debt against him, Plaintiff said, "Come on, he's my father." Debtor believes that Plaintiff wants Debtor to liquidate her IPERS account in order to pay the debt. Plaintiff testified that his father said he will enforce this debt against him if Debtor does not pay. Woodrow Lee did not testify at trial.

Debtor's current monthly net income is $1,740. She has itemized the following living expenses:

| | |
|---|---|
| Electricity and heating fuel | $100.00 |
| Cell phone (four phones) | 200.00 |
| Food | 200.00 |
| Clothing | 50.00 |
| Laundry and dry cleaning | 20.00 |
| Medical and dental | 50.00 |
| Transportation (not including car payments) | 100.00 |
| Recreation | 40.00 |
| Charitable contributions | 20.00 |
| Insurance: Auto | 50.00 |
| Car payment | 311.44 |
| Credit card payment | 20.00 |
| Child support | 329.65 |
| Meals for children during visitations | 50.00 |
| Personal grooming | 75.00 |
| Attorney fees | 100.00 |
| Daughter's college contribution | 275.33 |

These expenses total $1,991.42. Debtor lives in a home owned by her current husband who makes all the mortgage payments of approximately $1,400 per month. Based on these schedules, Debtor's expenses exceed her income by approximate-

ly $250 per month. Debtor's largest asset is her IPERS account currently valued at approximately $35,000. Debtor's 1999 Ford Taurus is worth between $5,000 and $6,000.

Plaintiff earns approximately $57,000 per year through his employment in the software industry. His net monthly income including the child support payments from Debtor totals about $3,400. Plaintiff has listed his total monthly expenses at $3,575. Plaintiff stated his mandatory monthly contribution for his daughter's college education was $415. However, this figure should be $275 per month on the schedules because Plaintiff is only required to pay it for eight months of the year. After adjusting Plaintiff's contribution to his eldest daughter's college expenses and disregarding Plaintiff's attorney fees, Plaintiff's expenses are approximately $3,200 per month.

## CONCLUSIONS OF LAW

Plaintiff seeks a determination that the debt owed by Debtor to Woodrow Lee is nondischargeable under 11 U.S.C. § 523(a)(15). This section precludes the discharge of debts that are

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court or record, a determination made in accordance with Sat or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonable necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor an, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preserva-

tion, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

It is largely uncontested that the debt owed to Woodrow Lee by Debtor is of the nature of that described in § 523(a)(15). Plaintiff and Debtor incurred the debt while married and both parties signed the promissory note. Upon dissolution of the marriage the couple agreed that each party would satisfy half of the outstanding balance of $30,000. The settlement agreement provides that both parties would hold each other harmless for the debts stated therein. If Debtor is granted a discharge for the debt owed to Woodrow Lee, Plaintiff will then be legally obligated to satisfy the debt.

Since the debt is part of a nonsupport property settlement award, there is a rebuttable presumption of nondischargeability. *In re Moeder* 220 B.R. 52, 56 (8th Cir. BAP 1998). The burden now rests with Debtor to establish either (1) she is unable to pay the debt or (2) the benefit to her of discharging the debt will outweigh the detriment to Plaintiff. *Id.* Debtor must prove one of these two exceptions by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### ABILITY TO PAY

"An inability to pay exists under § 523(a)(15)(A) if excepting a debt from discharge would reduce a debtor's income to below a level necessary for the support of the debtor and debtor's dependents." *In re Eiklenborg,* 286 B.R. 718, 722 (Bankr.N.D.Iowa 2002); *In re Anthony,* 190 B.R. 433, 436 (Bankr.N.D.Ala.1995). In order to make this determination, the

Court may consider factors similar to those applied in a Chapter 13 disposable income analysis under § 1325(b)(2). *In re Windom*, 207 B.R. 1017, 1021 (Bankr.W.D.Tenn.1997)(noting the language in § 523(a)(15)(A) is nearly identical to language in § 1325(b)(2)).

■ In computing disposable income under Chapter 13, it is necessary to examine Debtor's current and future financial status, including potential earnings, and whether Debtor's expenses are reasonably necessary. *In re Barker*, No. 97–01813–C, slip op. at 8 (Bankr.N.D.Iowa Apr. 7, 1998)(citing *In re Jodoin*, 209 B.R. 132, 142 (9th Cir. BAP 1997)).

Initially, the Court must examine Debtor's present and future earnings. Debtor currently works in day care and earns $500 per week. This salary produces approximately $1,740 per month for Debtor. However, Debtor has been offered and has accepted a new position which is to begin in October 2003. This employment will provide Debtor with an annual salary of $27,000. It appears that this new position will increase Debtor's monthly gross income by about $250. Debtor's net income should increase by over $200 per month starting in October. This Court accepts Debtor's assertion that she may have difficulty in the short term achieving a career position of similar status and income potential as that of her previous position as an elementary school principal, though there is no evidence to indicate she may not do so at some point. Also, in addition to Debtor's experience as an elementary school principal, she has a master's degree in education and has experience teaching at the elementary and collegiate levels. Given her education and experience, it is fair to conclude that Debtor has significant potential to increase her income over time.

■ In considering Debtors ability to pay this debt, the Court may consider the income of a new spouse. *Eiklenborg*, 286 B.R. at 722 (citing *In re Shea*, 221 B.R. 491 (Bankr.D.Minn.1998)). The court in *Shea* stated:

> [W]hen supplemental income from a new spouse or live-in companion serves to alter the debtor's financial prospects, the Court must factor that consideration into its evaluation of [the debtor's] "ability to pay" . . . . Absent consideration of a new spouse's income and its debt-absorbing impact upon the family's finances, . . . the Court cannot determine exactly what quantum of the debtor's own income truly is "necessary" for the support of himself and his dependents. Consequently, when applying the "ability to pay" standard of section 523(a)(15)(A), a court must consider the income of a new spouse or spousal equivalent in order to reach a complete satisfaction of the task before it.

*Shea*, 221 B.R. at 499–500.

Debtor's husband, Patrick O'Shaughnessy, is a college professor. He earns approximately $83,000 per year. Testimony was presented that Mr. O'Shaughnessy has a limited capacity to help pay for Debtor's obligations due to his own debt load, alimony payments, and obligation to support his own children. Other than Mr. and Mrs. O'Shaughnessy's 2002 tax returns, no documentation was presented to the Court substantiating his income or expenses. Debtor testified that Mr. O'Shaughnessy pays the entire mortgage on the residence in which they reside. When Debtor begins her new job, total gross family income should be approximately $110,000 per year. Given the collective gross income of Debtor and Mr. O'Shaughnessy, it is fair to conclude that the debt to Woodrow Lee can be satisfied over a reasonable period of time by Debtor.

■ Itemized expenses must be examined to ensure that they are "reasonably necessary." *Barker,* slip op. at 8. This Court has adopted the "lumping method" in determining whether a debtor has the excess funds necessary to satisfy a debt. *In re Gleason,* 267 B.R. 630, 633 (Bankr.N.D.Iowa 2001). This method requires a determination of whether each category of Debtor's expenses is mostly discretionary or nondiscretionary. *Id.* A decision is then made whether the aggregate amounts are reasonable and necessary. A debtor is not required to "live by bread alone," but is "allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses in their budget." *Id.* (citing *In re Gonzales,* 157 B.R. 604, 608 (Bankr.E.D.Mich.1993)).

> The proper methodology is to aggregate all expenses projected by the debtor which are somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."

*In re Beckel,* 268 B.R. 179, 183–84 (Bankr. N.D.Iowa 2001) (quoting *Gonzales,* 157 B.R. at 609).

Debtor's listed nondiscretionary expenses total $1,566. Her itemized discretionary expenses are $425. Debtor's nondiscretionary expenses are due in large part to her obligation to provide support for her two daughters. Debtor's discretionary expenses are high and could easily be decreased by at least $150 to $275 per month which would still allow Debtor a comfortable living standard.

■ Many of Debtor's expenses will terminate in less than 5 years. Debtor's duty to pay $100 per month in legal fees will terminate in the near future. Debtor's obligation to pay for her daughter's college education will cease in four years. Her child support payments will cease within three years. This Court has held that repayment under the ability-to-pay test should occur within a reasonable time. *In re Hildreth,* No. 99–01426F, slip op. at 5 (Bankr.N.D.Iowa Sept. 6, 2000). However, a reasonable period of time need not "be measured strictly against the three- or five-year term of a Chapter 13 plan." *Id.* at 6. Here, satisfaction of the debt to Woodrow Lee within ten years would not be considered unduly lengthy.

■ Adjusting Debtor's income to reflect her new position yields an increase in her monthly net income of $200. Adjusting Debtor's discretionary expenses increases the disposable income available to satisfy the debt by about $150 per month. Debtor's discretionary income rises by another $100 per month by removing the attorney fees from nondiscretionary expenses since they are not an ongoing expense. A monthly payment of only $225 per month at 7% interest would allow the debt in question to be satisfied within 10 years. Debtor has the ability to pay that amount currently. Given Mr. O'Shaughnessy's current income, Debtor has the ability to pay more than that. When the car loan is satisfied, the child support payments cease, and the obligation to contribute to her daughter's college expenses terminates, Debtor's ability to pay will increase substantially.

For all these reasons, this Court concludes that Debtor has the ability to pay the outstanding debt to Woodrow Lee. Debtor has not satisfied 11 U.S.C. § 523(a)(15)(A).

### BENEFIT v. DETRIMENT

■ Given that the two exceptions to nondischargeability stated in

§ 523(a)(15) are disjunctive, Debtor can have the debt in question discharged by proving that the effect of a discharge will provide more benefit to her than the resulting harm to her ex-husband. When balancing the benefit versus the harm under § 523(a)(15)(B), it is necessary to compare the relative living standards of the parties. *Eiklenborg,* slip op. at 3 (citing *In re Lumley,* 258 B.R. 433, 437 (Bankr. W.D.Mo.2001)). If Debtor's standard of living is equal to or greater than Plaintiff's, then discharge of the debt is not appropriate. *In re Williams,* 210 B.R. 344, 347 (Bankr.D.Neb.1997). The income and expenses of each party must also be considered when evaluating the benefit and detriment of a discharge under § 523(a)(15)(B). *Lumley,* 258 B.R. at 437.

■ Debtor lives with her current husband who pays the mortgage of about $1,400 per month. Plaintiff's home mortgage is $785 per month. These figures suggest that Debtor is residing in a home that supports a lifestyle at least as comfortable as that of Plaintiff. Both parties own cars worth between $5,000 and $6,000. Plaintiff owns a second car, but it is of negligible value.

Debtor's household adjusted gross income in 2002 was over $110,000, and should approach that level again this year. Plaintiff will earn between $56,000 and $58,000 this year. Plaintiff also receives $329.65 per month from Debtor for child support. The funds for child support are presumably being used to offset the expenses of child rearing. There is no evidence that Plaintiff has someone to help offset a portion of the household expenses.

Examining the entire record, this Court must conclude that Debtor has failed to establish that her standard of living is less than that of Plaintiff's or that her excess income is substantially less than Plaintiff's.

She has not satisfied the burden of § 523(a)(15)(B).

## EFFECT OF THE FAMILIAL RELATIONSHIP BETWEEN PLAINTIFF AND CREDITOR

Ultimately, the essence of Debtor's position is that under the "benefit versus detriment" test of § 523(a)(15)(B), the creditor, Plaintiff's father, will not enforce the outstanding obligation against his son. This argument would be more persuasive if the debt was a nondischargeable support obligation under § 523(a)(5). *In re Krein,* 230 B.R. 379 (Bankr.N.D.Iowa 1999). Under the holding of *Krein,* a debtor is only obligated to reimburse a former spouse under an indemnification provision of a settlement agreement for amounts that the former spouse was actually required to pay to the creditor. *Id.* at 387. Because of the distinction between § 523(a)(5) and § 523(a)(15), Debtor is required not only to reimburse Plaintiff for amounts that he may pay the creditor, but also to pay the creditor directly pursuant to the settlement agreement.

For a debt to be nondischargeable under § 523(a)(5), it must be "to a spouse, former spouse, or child of the debtor...." 11 U.S.C. § 523(a)(5). There is no such requirement under § 523(a)(15). Under § 523(a)(15) the debt must not be a support obligation under § 523(a)(5), which neither party asserts is the case, and it must be "incurred by the debtor ... in connection with a separation agreement." 11 U.S.C. § 523(a)(15). Although Debtor was personally obligated on the entire debt owed to Woodrow Lee under the terms of promissory note, a new obligation was created when the settlement agreement was executed. Under the settlement agreement Debtor agreed to pay $15,000 to Woodrow Lee in consideration for Plaintiff paying the other $15,000. It is this con-

tract which generated the debt at issue. Debtor has received a discharge of her $30,000 joint and several obligation to repay Woodrow Lee under the original promissory note that she signed, but she is still obligated to pay $15,000 to Woodrow Lee pursuant to the settlement agreement with Plaintiff.

## HISTORY OF PLAINTIFF RECEIVING GIFTS FROM CREDITOR

Debtor argues that given Woodrow Lee's history of bestowing large cash gifts upon his son (and Debtor during the couple's marriage) and willingness to forgive debt obligations of the couple in the past, there is compelling evidence suggesting he will not enforce the debt in question against Plaintiff. This argument has some appeal. However, the fact remains that if Debtor is relieved of this obligation, Plaintiff will remain legally obligated to repay the debt to his father. This Court perceives no material difference between a situation where Plaintiff's father forgives the debt owed by his son and where Woodrow Lee gifts his son $15,000 in cash which is then used to repay the debt. Ultimately, this Court must determine whether Plaintiff's history of receiving large cash gifts should be considered in determining the level of harm he will suffer from incurring the debt. For several reasons this Court answers the question in the negative.

Unlike earned income, the amount one receives in gifts is beyond one's control. The amount that people receive as gifts is wholly within the discretion of the giver. If this Court is to consider the likelihood of Plaintiff receiving gifts from his father, then, likewise, this Court would need to consider the possibility of Debtor receiving or inheriting property in the future. No evidence was presented regarding the financial status of Debtor's relatives. However, it is possible that she will receive gifts or inherit money in her lifetime. The uncertainty that any such gifts will take place or in what amount precludes this Court from considering these potential gifts when examining one's ability to pay under § 523(a)(15)(A), or the benefit or detriment one will incur under § 523(a)(15)(B).

Additionally, while the record might suggest the result Debtor proposes, there is no direct evidence that Woodrow Lee would, in fact, decline to seek reimbursement from his son if Debtor failed to pay. The record is devoid of any concrete evidence as to his present state of mind or the present state of his finances. It is as easy to speculate why Mr. Lee would enforce his rights as it is why he would not. In summary, the record lacks definitive evidence that Mr. Lee would follow the avenue suggested by Debtor.

Finally, when Debtor entered into the stipulation which presently binds her, she was aware of all the operative facts which bear on this issue. She entered into the hold harmless agreement knowing the possibility her now ex-father-in-law may elect not to enforce his rights against his son. It would be unjust to grant Debtor relief from this debt in bankruptcy based on facts which were known to her at the outset.

## CONCLUSION

The debt owed by Debtor Beth O'Shaughnessy to Woodrow Lee falls within the scope of 11 U.S.C. § 523(a)(15). If this debt is discharged or unsatisfied in any way, Plaintiff Kenneth Lee is legally obligated to pay the debt. By enacting § 523(a)(15), Congress specifically wanted to prohibit the transfer of debts from an individual to a former spouse by declaring

bankruptcy. This is the exact situation before this Court.

Notwithstanding this intention, Congress still permitted a discharge by enacting two exceptions to the general rule prohibiting the discharge of such debts. A discharge of the debt will be granted if either the debtor cannot pay the debt or the discharge will benefit the debtor more than the harm incurred by the former spouse. Debtor has failed to prove either of the exceptions by a preponderance of the evidence as required by law. Debtor's household gross income was over $110,000 last year and should approach that level again this year. Several of Debtor's larger monthly expenses will terminate in the next few years. Debtor enjoys a standard of living which, in every objective sense, is equal to or superior to that of Kenneth Lee.

Disallowing a discharge of this debt will not prevent Debtor from obtaining the financial "fresh start" allowed by the bankruptcy code. Debtor will still be relieved of paying close to $30,000 in unsecured debts. Debtor and her husband have significant income and assets. Paying the debt owed to Woodrow Lee will not cause Debtor undue financial hardship.

**WHEREFORE,** for all the reasons set forth herein, the complaint to determine dischargeability filed by Plaintiff and against Defendant is GRANTED.

**FURTHER,** the debt owed by Defendant to Woodrow Lee is determined to be nondischargeable.

**FURTHER,** if the actual amount owed or the terms of repayment are in controversy, that amount or those terms can be clarified in the Iowa Courts.