**Sandra Jean BROWN, Debtor.**

**Kevin E. BROWN, Plaintiff,**

v.

**Sandra Jean BROWN, Defendant.**

**Bankruptcy No. 01–02347–C.**
**Adversary No. 01–9181–C.**

United States Bankruptcy Court,
N.D. Iowa.

Nov. 24, 2003.

Richard L. Boresi, Cedar Rapids, IA, for Debtor/Defendant.

Jon M. McCright, Cedar Rapids, IA, for Plaintiff.

## ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND TO DENY DISCHARGE

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for hearing on October 28, 2003 on Plaintiff's complaint to determine dischargeability of debt and to deny discharge. Plaintiff Kevin E. Brown appeared with Attorney Jon McCright. Defendant/Debtor Sandra Jean Brown appeared with Attorney Richard Boresi. After presentation of evidence, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) & (J).

### STATEMENT OF THE CASE

Plaintiff Kevin E. Brown asserts that Debtor Sandra Jean Brown should be denied a discharge under 11 U.S.C. § 727(a)(4). In the alternative, Plaintiff alleges that under 11 U.S.C. § 523(a)(15) certain debts owed by Debtor to him and to certain third parties are not dischargeable.

### FINDINGS OF FACT

Plaintiff and Debtor were married in 1996. Debtor brought two children to the marriage. The couple had a child during the marriage. Plaintiff also adopted Debtor's two children during the marriage. The marriage was dissolved in February 2001 by a decree of dissolution entered in the Iowa District Court for Linn County. After a custody dispute in the Iowa District Court, Plaintiff was awarded custody of Amanda, Debtor's biological daughter

who was adopted by Plaintiff, and Kathleen, the couple's biological daughter born during the marriage. Debtor retained custody of her son, Jonathan, who is now 18 years old and no longer resides with Debtor. The Iowa Court of Appeals affirmed the District Court's decision regarding custody of the two girls and awarded Plaintiff attorney fees incurred during the appeal. Although custody of both girls was awarded to Plaintiff, Amanda has been living with Debtor for the last year and a half.

Debtor and Plaintiff entered into a prenuptial agreement prior to their marriage. They maintained separate bank accounts and held title in several assets individually throughout the marriage. Plaintiff loaned Debtor $2500 during the marriage. This debt remains unsatisfied.

Debtor filed a voluntary petition for bankruptcy on June 29, 2001, just over four months after the dissolution decree was entered. Debtor testified during the dissolution proceedings in January 2001 that she did not plan to file for bankruptcy once the dissolution of marriage was finalized.

After the dissolution in 2001, Debtor began living with Steven Freytag. Debtor and Mr. Freytag have one child together, Alex, who is now about 17 months old. Debtor is currently employed as an hourly employee for the Maytag Corporation in Amana, Iowa. She has held this position for more than nine years. Debtor's income in 2002 was approximately $26,460. Her 2002 income was lower than a normal year because she had three months of extended leave. Her income for 2003 should exceed that amount because of a wage increase and because Debtor is not taking extended leave as she did in 2002. Debtor's hourly wage is $16.15. Debtor could earn approximately $32,000 per year without working overtime at her current

hourly rate. Evidence was presented stating that Mr. Freytag earned $35,886 as of October 11, 2003 through his employment with Colony Heating & Cooling. He will earn approximately $45,000 this year.

Debtor listed her current monthly income at $1,704.54 on her Amended Schedule I. This amount is Debtor's net take home pay after deductions for taxes, insurance, union dues, loan repayments to her employer, child support, and loan repayments to her 401(k). Debtor has scheduled monthly expenses at $1,763.76. The scheduled monthly expenses are as follows:

| | |
|---|---|
| Mortgage payment | $300.00 |
| Food | $650.00 |
| Clothing | $ 75.00 |
| Laundry and dry cleaning | $ 15.00 |
| Medical, dental, and prescriptions | $ 71.00 |
| Transportation | $ 80.00 |
| Recreation | $ 20.00 |
| Auto insurance | $ 30.76 |
| Student loan payment | $ 80.00 |
| Dental bill payment | $ 50.00 |
| Hospital bill | $ 50.00 |
| Credit card payment | $ 10.00 |
| School lunches | $ 32.00 |
| Daycare | $325.00 |

The mortgage payment on the house shared by Debtor and Mr. Freytag is $1000 per month. Debtor pays $300 of that expense and Mr. Freytag pays $700. Mr. Freytag is responsible for certain household expenses while Debtor pays for others.

Plaintiff currently earns $14.50 per hour through his employment at Mid Iowa Tools. Plaintiff began this position at Mid Iowa Tools in October 2003. Prior to this job, he was earning $12.50 per hour at the James W. Bell Company. Due to employee layoffs, Plaintiff has experienced job instability over the past four years. His adjusted gross income for the year 2002 was $25,533. Plaintiff also receives $177.15 per month from Debtor for child support. Plaintiff's mortgage payment is $662 per month. He owns a 2003 Chevro-

let pick-up. Plaintiff drives the vehicle approximately 82 miles per day for work.

Plaintiff's affidavit of financial status states that his total monthly expenses exceed his total monthly income by approximately $900. Plaintiff has a significant amount of debt, which includes about $45,000 owed to his relatives.

Plaintiff asks the Court to determine that several debts are nondischargeable under § 523(a)(15). They include a MBNA credit card debt which is in Plaintiff's name but which Debtor was ordered to pay pursuant to the dissolution decree. The current balance on the credit card is $9,393.35. It appears that Plaintiff has been making payments on the MBNA card since January 2002. Plaintiff is also a co-borrower on a loan from the Amana Credit Union. Debtor was ordered to pay this debt under the dissolution decree.

Debtor was also ordered to pay Plaintiff $2,500 in satisfaction of the loan between the two parties during their marriage. Plaintiff was awarded $1,000 in attorney fees from Debtor for defending the appeal of the dissolution decree. Debtor was also ordered to pay Plaintiff $228.50 for transcript preparation for court costs associated with Debtor's appeal. The dissolution decree stipulated that each party would hold the other harmless if one party was forced to pay an obligation assigned to the other in the decree. The total amount of the debts that could potentially be excepted from the discharge under § 523(a)(15) is approximately $15,500 [1] plus the sum of the payments already made by Plaintiff to MBNA.

## ISSUES PRESENTED

This case requires the Court to answer the following questions. First, should debtor be denied a discharge under § 727(a)(4) for stating under oath during the dissolution proceedings that she would not file for bankruptcy? Second, if Debtor is allowed a discharge, are the debts in question within the § 523(a)(15) exception to discharge? Third, if Debtor is allowed a discharge and the debts in question are within the § 523(a)(15) exception, has Debtor satisfied at least one of the two exceptions in § 523(a)(15)?

## OBJECTION TO DISCHARGE UNDER § 727(a)(4)(A)

 A debtor who "knowingly and fraudulently, in or in connection with the case ... made a false oath or account" shall not be granted a discharge. 11 U.S.C. § 727(a)(4)(A). The objecting party must establish that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the statement was made by the debtor with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Pry*, No. 98-9102S, slip op. at 4 (Bankr. N.D. Iowa April 28, 1999) (citing *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)). Each of these five elements must be proved by a preponderance of the evidence. *In re Mech*, No. 97-9157S, slip op. at 3 (Bankr.N.D.Iowa March 2, 1999) (citing *In re Maletta*, 159 B.R. 108, 111 (Bankr.D.Conn.1993)).

 A false oath will satisfy the materiality requirement if it "bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his [or her] property." *In re Olson*, 916 F.2d 481, 484 (8th Cir.1990).

---

1. The Court calculated this sum using $2,533 for the amount owing to the Amana Credit Union, which was the outstanding balance on January 31, 2003. The amount may be less because payments have been automatically deducted from Debtor's paycheck each week.

■ Plaintiff asserts that Debtor's testimony in the dissolution proceedings indicating that she would not file for bankruptcy is a false oath under § 727(a)(4)(A). Debtor was asked at trial, "Do you plan on filing a bankruptcy when this dissolution is over?" Debtor responded, "No." Given that Debtor filed for bankruptcy soon after the dissolution decree was entered, it is fair to conclude that the first four elements stated above are satisfied.

Plaintiff's claim under § 727(a)(4)(A), however, must fail because the alleged false statement does not materially relate to the bankruptcy case. The statement was not made regarding Debtor's business or in connection with the discovery of assets. The statement was made in another court proceeding approximately six months before Debtor filed for bankruptcy. Plaintiff has provided no authority for the proposition that statements made in other courts can potentially satisfy § 727(a)(4)(A) and prevent Debtor from being granted a discharge. It is the conclusion of this Court that such a statement is not materially related to the bankruptcy case. Debtor is not denied a discharge under § 727(a)(4)(A). Any misrepresentations made are more properly addressed in the forum in which they allegedly occurred.

## THE DEBTS ARE WITHIN THE § 523(A)(15) EXCEPTION TO DISCHARGE

The Court must determine if the debts in question fit within § 523(a)(15). This section precludes discharge of debts that are

(15) not of the kind described in paragraph (5) that [are] incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit. . . .

11 U.S.C. § 523(a)(15).

■ It is unnecessary to go beyond the plain language of § 523(a)(15) to determine that all the amounts in controversy fit within this exception to discharge. The dissolution decree specifically states that Debtor shall pay the MBNA credit card, the $2,500 loan to Plaintiff, and the debt to the Amana Credit Union. The orders demanding Debtor to pay Plaintiff for attorney fees and transcript costs arose due to the appeal of the dissolution decree. These debts were incurred "in the course of a divorce." 11 U.S.C. § 523(a)(15). Lastly, Debtor's obligation to reimburse Plaintiff for any amounts paid by him for debts assigned to Debtor by the dissolution decree arose out of the dissolution as well. All the amounts in controversy are of the nature of those debts described in § 523(a)(15). Because the debts are part of a nonsupport property settlement award, there is a rebuttable presumption of nondischargeability. *In re Moeder,* 220 B.R. 52, 56 (8th Cir. BAP 1998).

## EXCEPTIONS TO NONDISCHARGEABILITY UNDER § 523(a)(15)

■ The presumption of nondischargeability can be overcome if Debtor can establish that she cannot pay the debts or that the benefit to her of a discharge will outweigh the detriment to Plaintiff. *Id.* Debtor must prove one of these two exceptions by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## ABILITY TO PAY

■ A debt described in § 523(a)(15) will be discharged if "the debtor does not have the ability to pay such debt from income or property of the debtor not rea-

sonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 523(a)(15)(A).

An inability to pay exists under § 523(a)(15)(A) if excepting a debt from discharge would reduce a debtor's income to below a level necessary for the support of the debtor and debtor's dependents. In order to make this determination, the Court may consider factors similar to those applied in a Chapter 13 disposable income analysis under § 1325(b)(2). In computing disposable income under Chapter 13, it is necessary to examine Debtor's current and future financial status, including potential earnings, and whether Debtor's expenses are reasonably necessary.

*In re O'Shaughnessy,* 301 B.R. 24, 30 (Bankr.N.D.Iowa 2003) (citing *In re Windom,* 207 B.R. 1017, 1021 (Bankr. W.D.Tenn.1997) (noting the language in § 523(a)(15)(A) is nearly identical to the language in § 1325(b)(2))); *In re Eiklenborg,* 286 B.R. 718, 722 (Bankr.N.D.Iowa 2002); *In re Anthony,* 190 B.R. 433, 436 (Bankr.N.D.Ala.1995); *In re Barker,* No. 97–01813, slip op. at 8 (Bankr.N.D.Iowa Apr. 7, 1998) (citing *In re Jodoin,* 209 B.R. 132, 142 (9th Cir. BAP 1997)).

 The Court also considers any income earned by Debtor's spouse or live-in companion. *Eiklenborg,* 286 B.R. at 722 (citing *In re Shea,* 221 B.R. 491 (Bankr. D.Minn.1998)). The *Shea* court stated:

[W]hen supplemental income from a new spouse or live-in companion serves to alter the debtor's financial prospects, the Court must factor that consideration into its evaluation of [the debtor's] "ability to pay".... Absent consideration of a new spouse's income and its debt-absorbing impact upon the family's finances, ... the Court cannot determine exactly what quantum of the debtor's

own income truly is "necessary" for the support of himself and his dependents. Consequently, when applying the "ability to pay" standard of section 523(a)(15)(A), a court must consider the income of a new spouse or spousal equivalent in order to reach a complete satisfaction of the task before it.

*Shea,* 221 B.R. at 499–500.

 This Court has adopted the "lumping method" to determine if a debtor's expenses are reasonably necessary. *Barker,* slip op. at 8; *In re Gleason,* 267 B.R. 630, 633–34 (Bankr.N.D.Iowa 2001). Debtor's expenses are divided into two categories: discretionary and nondiscretionary. *Id.* The Court then computes the sum of all the expenses in each category and makes a determination of whether either category is excessive. *O'Shaughnessy,* 301 B.R. at 31. A debtor is not required to "live by bread alone," but is "allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses in their budget." *Gleason,* 267 B.R. at 633 (citing *In re Gonzales,* 157 B.R. 604, 608 (Bankr.E.D.Mich.1993)).

 "This Court has held that repayment under the ability-to-pay test should occur within a reasonable time. However, the time needed for repayment need not 'be measured strictly against the three- or five-year term of a Chapter 13 plan.' " *O'Shaughnessy,* 301 B.R. at 31 (quoting *In re Hildreth,* No. 99–01426F, slip op. at 5 (Bankr.N.D.Iowa Sept. 6, 2000)).

 Applying the law stated above to the facts at hand, the Court finds that Debtor does have an ability to pay all the § 523(a)(15) debts. Debtor has worked for the same company for nine years. She currently earns $16.15 per hour. While she earned approximately $26,500 in 2002,

her yearly earnings should increase due to a raise in her hourly rate and she will not take a leave of absence as she did in 2002. Debtor's live-in companion is on pace to earn approximately $45,000 this year. Debtor and Mr. Fretag's aggregate yearly earnings could easily reach upwards of $75,000.

The Court finds all of Debtor's expenses are reasonably necessary. Neither Debtor's discretionary or nondiscretionary expenses are excessive in the aggregate. Debtor's own income and expense schedules show a monthly deficiency of about $63 per month. After considering Mr. Freytag's income, however, Debtor has enough income to make up the deficiency and make reasonable payments on the § 523(a)(15) debts. Looking to the future, the record indicates that the loan from Amana Credit Union will be satisfied in the near future increasing Debtor's monthly discretionary income

### BENEFIT VERSUS DETRIMENT

 Although Debtor has an ability to pay the debts in question, she may still be granted a discharge of those debts if she can prove that the discharge of those debts will benefit her more than the harm incurred by Plaintiff. A debtor will be relieved of paying § 523(15) debts if he or she can establish that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." 11 U.S.C. § 523(a)(15)(B). In comparing the potential benefit to the debtor versus the detriment to a former spouse, this Court compares the relative living standards of the parties. *Eiklenborg,* 286 B.R. at 723 (citing *In re Lumley,* 258 B.R. 433, 437 (Bankr.W.D.Mo.2001)). "If Debtor's standard of living is equal to or greater than Plaintiff's, then discharge of the debt is not

appropriate." *O'Shaughnessy,* 301 B.R. at 32; *In re Williams,* 210 B.R. 344, 347 (Bankr.D.Neb.1997). The income and expenses of each party will be considered in the benefit versus detriment analysis. *Lumley,* 258 B.R. at 437.

 It is the conclusion of this Court that discharging the § 523(a)(15) debts is more detrimental to Plaintiff than beneficial to Debtor. Plaintiff has suffered through a series of layoffs and periods of unemployment over the past four years. He was earning $12.50 an hour until he started his new job in October 2003. His new hourly wage is $14.50. Debtor's hourly salary is higher than Plaintiff's and she has the benefit of Mr. Freytag's salary to contribute to the household expenses. Plaintiff's house payment is $662 per month while Debtor resides in a house with a monthly payment of $1000, of which she pays $300. Plaintiff has a significant debt load of his own and incurring more due to a discharge of Debtor's § 523(a)(15) debts would impose substantial hardship on him. Debtor has not proven the § 523(a)(15)(B) exception by a preponderance of the evidence as required by law.

### CONCLUSIONS

Debtor's assurances against taking bankruptcy in the dissolution proceeding do not materially relate to the bankruptcy case. Due to this lack of materiality, Plaintiff's objection to the discharge under § 727(a)(4)(A) is overruled. However, the particular debts in question that Debtor owes Plaintiff, or for which Plaintiff will be liable if not satisfied by Debtor, are § 523(a)(15) debts. Because Debtor has not established that she cannot pay the debts or that the benefit to her will outweigh the harm to Plaintiff, these debts are not discharged. This ruling will not prevent Debtor from obtaining the financial "fresh start" allowed by the Bankrupt-

cy Code. The Court estimates that Debtor will still be relieved of paying approximately $53,000 in unsecured debts. Given Debtor's and Mr. Freytag's yearly earnings, Debtor will not incur undue financial hardship.

**WHEREFORE,** Plaintiff's complaint to deny a discharge under § 727(a)(4) is DENIED.

**FURTHER,** Plaintiff's complaint to determine dischargeability under § 523(a)(15) is GRANTED.

**FURTHER,** Debtor's obligation to pay Plaintiff $2500 pursuant to the dissolution decree is determined to be nondischargeable.

**FURTHER,** Debtor's obligation to pay Plaintiff $1000 for attorney fees pursuant to an Iowa court order is determined to be nondischargeable.

**FURTHER,** Debtor's obligation to pay Plaintiff $258.50 in costs pursuant to an Iowa court order is determined to be nondischargeable.

**FURTHER,** Debtor's obligation to pay the MBNA credit card debt pursuant to the dissolution decree is determined to be nondischargeable.

**FURTHER,** Debtor's obligation to reimburse Plaintiff for amounts paid in satisfaction of the MBNA debt assigned to Debtor under the dissolution decree is determined to be nondischargeable.

**FURTHER,** Debtor's obligation to pay the debt to the Amana Credit Union pursuant to the dissolution decree is determined to be nondischargeable.

**FURTHER,** if the actual amounts owed or terms of repayment of any of the above debts are in controversy, those amounts and/or terms can be clarified in the Iowa State Courts.

**FURTHER,** judgment shall enter accordingly.